UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
NEW YORK TAXI WORKERS ALLIANCE, et al.,

                               Plaintiffs,

    -against-

UBER TECHNOLOGIES, INC., et al.,

                               Defendants.
------------------------------------------------------------ X

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**

16 Civ. 4098 (AKH)

ALVIN K. HELLERSTEIN, U.S.D.J.:

       On October 27, 2016, defendants moved to partially dismiss plaintiffs' first amended complaint ("FAC"). Oral argument was held on April 4, 2017. For the reasons stated on the record, I rule as follows:

1. The claims of plaintiff New York Taxi Workers Alliance ("NYTWA") are dismissed for lack of standing without leave to amend.

2. The minimum wage and "tools of the trade" claims of plaintiffs Haider, Carrasco, Cavaretta and Jallow are dismissed without prejudice and with leave to amend. Plaintiffs shall file a second amended complaint by May 12, 2017.

3. Defendants' motion to dismiss plaintiff Haider's promissory estoppel claim is denied.

4. Defendants' motion to dismiss the claims against defendants Camp and Gurley for lack of personal jurisdiction is denied.

5. Defendants' motion to dismiss the claims against defendants Kalanick, Gurley, Camp, Mohrer and Chapin on the ground that they are not

"employers" for purposes of liability under the Fair Labor Standards Act ("FLSA") is denied.

## DISCUSSION

The remainder of this opinion serves to more fully explain why plaintiff NYTWA lacks standing to be a plaintiff in this action.

NYTWA is a nonprofit membership organization that "works to ensure the fair treatment of its member Drivers, to improve their lives and to promote the dignity of all individuals who work in the private transportation sector in the New York City metropolitan area." FAC ¶ 13. Over 5,000 Uber drivers are NYTWA members. *Id.* ¶ 14. NYTWA does not purport to assert claims on behalf of the individual plaintiffs, but instead "brings this action on its own behalf as an organization." FAC ¶ 15. Based on this theory of "organizational" standing, NYTWA seeks a declaration that "individual Plaintiffs and those similarly situated who are class members are employees within the meaning of the law," and an injunction "prohibiting Uber from continuing to misclassify its workers and making illegal deductions from their wages." FAC at p. 76. In its opposition papers, NYTWA argues in the alternative that it also has "associational" standing to assert claims on behalf of its members. NYTWA lacks standing under either theory.

### I.   NYTWA Lacks Organizational Standing

An "association may have standing in its own right to seek judicial relief from injury to itself and to vindicate whatever rights and immunities the association itself may enjoy." *Warth v. Seldin*, 422 U.S. 490, 511 (1975). "Under this theory of 'organizational' standing, the organization is just another person—albeit a legal person—seeking to vindicate a right. To qualify, the organization itself 'must meet[ ] the same standing test that applies to individuals.'"

*N.Y. Civil Liberties Union v. N.Y.C. Transit Auth.*, 684 F.3d 286, 294 (2d Cir. 2012) (quoting *Irish Lesbian & Gay Org. v. Giuliani*, 143 F.3d 638, 649 (2d Cir. 1998)).

As a threshold matter, NYTWA must first demonstrate that it has Article III standing. "To meet the Article III standing requirement, a plaintiff must have suffered an 'injury in fact' that is 'distinct and palpable'; the injury must be fairly traceable to the challenged action; and the injury must be likely redressable by a favorable decision." *Denney v. Deutsche Bank AG*, 443 F.3d 253, 263 (2d Cir. 2006) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)).

NYTWA argues that it has satisfied this test because it "has spent considerable amounts of time counseling the individual plaintiffs and many other Uber drivers regarding their rights with respect to Defendant Uber." Its injury is "due to having to spend significant amount of staff time counseling individual Uber drivers, thus taking away staff time from its usual activities of organizing to reform conditions in the taxi and for-hire vehicle industry." It further alleges that "because of Uber's decision to misclassify its drivers as independent contractors, violate wage-and-hour laws and breach its driver contract, NYTWA has had to divert significant organizational resources away from broader organizing efforts and towards addressing Uber's wage theft." FAC ¶¶ 16-18. A declaration that Uber drivers are employees and not independent contractors, NYTWA contends, would help to redress this injury.

These allegations are sufficient to show constitutional standing under the Second Circuit's analysis in *Nnebe v. Daus*, 644 F.3d 147 (2d Cir. 2011). In that case, the Second Circuit held that NYTWA – the same organization that brings suit in this action – had organizational standing to sue under 42 U.S.C. § 1983 to redress the same injury alleged here: a diversion of organizational resources as a result of the defendant's unlawful practices. In *Nnebe*, NYTWA argued that its injury stemmed from having to expend resources to provide counseling

3

to NYTWA members whose licenses had been revoked by the New York City Taxi and Limousine Commission through an allegedly unconstitutional revocation process. The Second Circuit found this injury sufficient to confer standing, reasoning that "even if only a few suspended drivers are counseled by NYTWA in a year, there is some perceptible opportunity cost expended by the Alliance, because the expenditure of resources that could be spent on other activities 'constitutes far more than simply a setback to [NYTWA's] abstract social interests.'" 644 F.3d at 157. Because this interest was "specific to NYTWA" and "independent of the interest of individual drivers," NYTWA had standing to bring the action on its own behalf. *Id.* at 158.

However, in addition to Article III standing, a plaintiff must also satisfy the judicially self-imposed prudential limitations on standing, which include "the general prohibition on a litigant's raising another person's legal rights, the rule barring adjudication of generalized grievances more appropriately addressed in the representative branches, and the requirement that a plaintiff's complaint fall within the zone of interests protected by the law invoked." *Allen v. Wright*, 468 U.S. 737, 751. Under these prudential considerations, "the standing question ... is whether the constitutional or statutory provision on which the claim rests properly can be understood as granting persons in the plaintiff's position a right to judicial relief." *Warth*, 422 U.S. at 500.

In recent years, there has been an evolution in how courts describe this inquiry. For many years, courts often framed this prudential limitation in terms of "statutory standing." *See, e.g., Lerner v. Fleet Bank, N.A.*, 318 F.3d 113, 126 (2d Cir. 2003) ("A related aspect of standing, statutory standing, is broadly described as a part of the prudential considerations regarding the proper limits of jurisdiction."). Under this framework, a party lacks standing if it falls outside the category of individuals that are permitted to seek relief under a particular statute. *See, e.g., Connecticut v. Physicians Health Servs. Of Connecticut, Inc.*, 287 F.3d 110, 121 (2d

4

Cir. 2002) (holding that because ERISA specifies "the universe of plaintiffs who may bring certain civil actions ... non-enumerated parties lack statutory standing to bring suit under § 1132(a)(3) even if they have a direct stake in the outcome of the litigation.") (internal citation omitted). In *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377 (2014), the Supreme Court "clarified, however, that what has been called 'statutory standing' in fact is not a standing issue, but simply a question of whether the particular plaintiff 'has a cause of action under the statute.'" *Am. Psychiatric Ass'n v. Anthem Health Plans, Inc.*, 821 F.3d 352, 359 (2d Cir. 2016) (quoting *Lexmark*, 134 S. Ct. at 1387).

Regardless of whether the issue is framed in terms of prudential standing, statutory standing, or simply whether NYTWA has a cause of action, NYTWA must identify the source of law under which it is entitled to the declaratory and injunctive relief it seeks. It has failed to do so. In *Nnebe*, NYTWA properly alleged a cause of action under 42 U.S.C. § 1983. *See Nnebe*, 644 F.3d at 156 ("[N]othing prevents an organization from bringing a § 1983 suit on its own behalf so long as it can independently satisfy the requirements of Article III standing as enumerated in *Lujan*."). Here, by contrast, the only sources of law that NYTWA has invoked are the FLSA and the NYLL. Under both of those statutes, however, only "employees" may seek relief. *See* 29 U.S.C. § 216(b) ("An action to recover the liability prescribed in either of the preceding sentences may be maintained ... by any one or more employees for and in behalf of himself or themselves and other employees similarly situated."); NYLL § 663(1) ("If any employee is paid by his or her employer less than the wage to which he or she is entitled under the provisions of this article, he or she shall recover in a civil action..."); NYLL § 651(5) (defining employee as "any individual employed or permitted to work by an employer in any occupation."); *see also Bojaj v. Moro Food Corp.*, 2014 WL 6055771, at *4 (S.D.N.Y. Nov. 13, 2014) ("Only employees may sue under the FLSA and NYLL. Therefore, if plaintiffs do not

allege that [defendant] employed them, they lack standing to maintain a claim against [defendant].") (internal citations omitted).

NYTWA is not an employee of Uber, and therefore may not seek relief under the FLSA or the NYLL to redress its injury. Where Congress has specified the category of individuals who may obtain relief under a particular statute, courts are loathe to adopt liberal interpretations of such statutory limitations. In *Small v. Gen. Nutrition Companies, Inc.*, 388 F. Supp. 2d 83 (E.D.N.Y. 2005), for example, a disability rights advocacy organization sought to sue a retail store under Title III of the Americans with Disabilities Act ("ADA"). The statute limited relief to "any person who is being subjected to discrimination of the basis of disability." The organization, however, "suffered no direct discrimination but has only incurred any potential injuries as a result of discrimination against others." Because Congress could not have intended "to eliminate prudential standing requirements under Title III of the ADA," the court dismissed the organization for lack of standing. *Id.* at 92–93. Similarly, in *N.Y. Metro Area Postal Union v. Potter*, 2003 WL 1701909 (S.D.N.Y. Mar. 31, 2003), the court held that unions lacked standing to assert claims under the Family and Medical Leave Act because that statute "provides a private right of action thereunder only to an 'eligible employee,' as that term is defined by the Fair Labor Standards Act." Because a union was not an "eligible employee," it could not obtain relief under the FMLA. *Id.* at *2.

Nor may NYTWA obtain injunctive relief under the FLSA. As the Tenth Circuit succinctly summarized in *United Food & Commercial Workers Union, Local 1564 of New Mexico v. Albertson's, Inc.* ("*United Food & Commercial Workers Union*"),

> The right, however, to sue for injunctive relief under the FLSA rests exclusively with the federal government. *See* 29 U.S.C. § 217. Section 217 provides for injunctive relief in federal court from employer acts prohibited by 29 U.S.C. § 215. 29 U.S.C. § 211(a) further provides that 'the Administrator shall bring all actions under section 217 of this title to restrain violations of this chapter.' Courts have thus uniformly held that 'the right

6

>to bring an action for injunctive relief under the Fair Labor Standards Act rests exclusively with the United States Secretary of Labor.'

207 F.3d 1193, 1197–98 (10th Cir. 2000) (quoting *Powell v. State of Fla.*, 132 F.3d 677, 678 (11th Cir. 1998)); *see also N.Y. State Court Clerks Ass'n v. Unified Court Sys. of the State of N.Y.*, 25 F. Supp. 3d 459, 466 (S.D.N.Y. 2014) (same).

NYTWA argues that notwithstanding the clear text of the FLSA, its claims for declaratory and injunctive relief are not precluded because the relief it seeks falls within the "zone of interest" created by the statute. *See Lexmark*, 134 S. Ct. at 1388 (a "statutory cause of action extends only to plaintiffs whose interests 'fall within the zone of interests protected by the law invoked.'") (quoting *Allen v. Wright*, 468 U.S. 737, 751 (1984)). At oral argument, NYTWA cited *Lexmark* for the proposition that the zone of interest test "forecloses suit only when a plaintiff's interests are so marginally related to or inconsistent with the purposes implicit in the statute that it cannot reasonably be assumed that Congress authorized that plaintiff to sue." *Lexmark*, 134 S. Ct. 1389 (internal quotation marks omitted). However, the Supreme Court made this statement "in the [Administrative Procedure Act] context," and made clear that "the breadth of the zone of interests varies according to the provisions of law at issue, so that what comes within the zone of interests of a statute for purposes of obtaining judicial review of administrative action under the generous review provisions of the APA may not do so for other purposes." *Id.* (internal quotation marks omitted).

Here, the text, structure and legislative history of the FLSA make clear that the zone of interest is limited to protecting the rights and interests of employees, and does not extend to organizations. *See Arrington v. Nat'l Broad. Co.*, 531 F. Supp. 498, 501 (D.D.C. 1982) (discussing at length the legislative history of the 1947 "Portal-to-Portal" amendments to the FLSA, which eliminated a provision permitting employees to designate an agent or representative to maintain an action on their behalf). As the Tenth Circuit explained in *United*

7

*Food & Commercial Workers Union*, the "wording of [Section 216(b)] suggests that standing to pursue an action for liability is statutorily limited to employees only. This reading is also supported by the requirement that no employee be a party plaintiff absent written consent." 207 F.3d at 1200. Indeed, the fact that Section 216(b) of the FLSA requires employees to affirmatively opt in to collective actions strongly suggests that an outside organization cannot adjudicate legal issues that impact the rights of employees, even if resolution of those issues directly affects the organization as well.

Because NYTWA has failed to identify a statute under which it would be entitled to the declaratory or injunctive relief it seeks, it lacks organizational standing.

## II. NYTWA Lacks Associational Standing

In the alternative, NYTWA argues that it has "associational" standing, under which it purports to bring claims on behalf of its members, instead of on its own behalf. An "association has standing to bring suit on behalf of its members when: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Hunt v. Washington State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977).

The parties dispute whether NYTWA has satisfied the third factor under the *Hunt* test for associational standing. However, I need not resolve that issue because, as a matter of law, organizations such as NYTWA may not assert claims under the FLSA on behalf of their members, including claims for injunctive and declaratory relief. As one court summarized, there "is overwhelming support in the case law for the conclusion that Congress intended the FLSA, most pertinently 29 U.S.C. § 216(b), to prohibit labor organizations from suing on behalf of their members." *Small v. Gen. Nutrition Companies, Inc.*, 388 F. Supp. 2d 83, 96 (E.D.N.Y. 2005)

(citing cases that discuss the 1947 "Portal-to-Portal" amendments to the FLSA, which eliminated employees' ability to appoint representatives to sue on their behalf).

First, to the extent NYTWA seeks to assert overtime or minimum wage claims on behalf of its members, it is well-established that organizations may not assert claims for money damages under the FLSA. *See Bano v. Union Carbide Corp.*, 361 F.3d 696, 714 (2d Cir. 2004) ("We know of no Supreme Court or federal court of appeals ruling that an association has standing to pursue damages claims on behalf of its members."); *United Food & Commercial Workers Union*, 207 F.3d at 1200 ("The more straightforward reading of [Section 216(b)] is ... that organizations, as opposed to groups of individual consenting employees, cannot be plaintiffs to damages actions under § 216(b), consent or no."). Second, as discussed above, NYTWA may not seek injunctive relief on behalf of its members because only the Secretary of Labor may do so. *See N.Y. State Court Clerks Ass'n v. Unified Court Sys. of the State of N.Y.*, 25 F. Supp. 3d 459, 466 (S.D.N.Y. 2014) (the "right to bring an action for injunctive relief under the Fair Labor Standards Act rests exclusively with the United States Secretary of Labor.") (internal quotation marks and citation omitted).

This leaves only NYTWA's claim for declaratory relief. However, a "mere demand for declaratory relief does not by itself establish a case or controversy necessary to confer subject matter jurisdiction." *S. Jackson & Son, Inc. v. Coffee, Sugar & Cocoa Exch. Inc.*, 24 F.3d 427, 431 (2d Cir. 1994). Here, NYTWA may not seek declaratory relief under the FLSA, even if that relief is sought on behalf of its members. To hold otherwise would disrupt a statutory scheme that requires employees to affirmatively consent to participation in a collective action under the statute. If NYTWA were permitted to seek declaratory or injunctive relief on behalf of its Uber driver members, those drivers could have their legal rights affected regardless of whether they choose to participate in the lawsuit or not. This would frustrate the purpose and

structure of the statute. As the Tenth Circuit explained in *United Food & Commercial Workers Union*,

> Given the overwhelming support in the case law for the conclusion that Congress intended § 216(b) to prohibit labor organizations from suing on behalf of their members for damages under the FLSA, we conclude that the Declaratory Judgment Act cannot be used to avoid § 216(b)'s ban on representative actions in the present context. If under the FLSA only the government can sue for injunctive relief from wage and hour violations under 29 U.S.C. §§ 206–207, and only employees can sue for damages for violations of those sections, this comprehensive statutory scheme does not leave a loophole for organizations to sue for declaratory relief.

207 F.3d 1201. Other courts are in accord. *See State of Nevada Employees' Ass'n, Inc. v. Bryan*, 916 F.2d 1384, 1391-92 (9th Cir. 1990) ("Although SNEA is not a union, it is clearly a 'representative,' and this action brought by SNEA is the type of 'representative action' barred by § 16(b). ... Although individual members of SNEA clearly have standing to bring this suit, the clear language and legislative history of § 16(b) indicate that SNEA itself cannot be a party in this action."); *Local 100, Serv. Employees Int'l Union, AFL-CIO v. Integrated Health Servs., Inc.*, 96 F. Supp. 2d 537, 539 (M.D. La. 2000) ("The definition of an employee under the FLSA ... does not empower a union or labor organization to sue on behalf of its members for violations of FLSA."); *id.* at n.2 (noting that another "court held that a union could not circumvent this statutory bar by framing its claims as those for injunctive or declaratory relief" and that "this Court would also be so inclined."). In light of this authority, I decline NYTWA's invitation to follow *Local 1035, Int'l Bhd. of Teamsters v. Pepsi-Cola Allied Bottlers, Inc.*, 83 F. Supp. 2d 301 (D. Conn. 1999), which contemplated the possibility of granting declaratory relief under the FLSA to a union. *Id.* at 304.

In passing the FLSA, Congress empowered workers to sue individually and collectively, to obtain double damages for minimum wage and overtime violations, and to

recover attorneys' fees from the defendant. 29 U.S.C. § 216(b). Congress specifically chose not, however, to authorize representative organizations to seek relief on behalf of member employees. Such organizations may advance funds, suggest counsel, and provide other appropriate assistance, but they may not themselves be parties to an action brought under the FLSA.

## CONCLUSION

Because NYTWA lacks standing, its claims are dismissed without leave to amend. The Clerk shall terminate the motion (Dkt. No. 25). Plaintiffs shall file a second amended complaint by May 12, 2017, which removes the claims of NYTWA and amends the individual plaintiffs' minimum wage and "tools of the trade" claims. Defendants shall answer or move by June 2, 2017. The parties shall appear for a status conference on June 16, 2017 at 10 a.m.

SO ORDERED.

Dated:  April 7, 2017
        New York, New York

_____
ALVIN K. HELLERSTEIN
United States District Judge