J4CVTAXC

```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

NEW YORK TAXI WORKERS
ALLIANCE, Individually, on
behalf of all others similarly
situated and as class
representatives, ET AL,

                Plaintiffs,

           v.                         16 CV 4098 (AKH)

UBER TECHNOLOGIES, INC.,
jointly and severally, ET AL,

                Defendants.           FAIRNESS HEARING

------------------------------x
                                      New York, N.Y.
                                      April 12, 2019
                                      11:30 a.m.

Before:

                HON. ALVIN K. HELLERSTEIN,

                                      District Judge

                       APPEARANCES

MIRER MAZZOCCHI & JULIEN
     Attorneys for Plaintiffs
BY:  JEANNE E. MIRER
     -AND-
NEW YORK TAXI WORKERS ALLIANCE
BY:  ZUBIN D. SOLEIMANY

LITTLER MENDELSON
     Attorneys for Defendants
BY:  ANDREW M. SPURCHISE
```

1            (Case called)
2            MS. MIRER:  Good morning, your Honor.
3            Jeanne Mirer, Mirer, Mazzocchi & Julien, for Bigu
4    Haider, *et al*.
5            THE COURT:  How are you, Ms. Mirer?
6            MS. MIRER:  Fine, thank you, your Honor.
7            How are you?
8            THE COURT:  Okay.  Hobbling.
9            MR. SOLEIMANY:  Zubin Soleimany, for the plaintiffs.
10           THE COURT:  Yes.
11           MR. SPURCHISE:  Andrew Spurchise of Littler Mendelson,
12   for defendants.
13           THE COURT:  Thank you, folks.
14           MR. SPURCHISE:  Thank you.
15           THE COURT:  So I read the settlement agreement, which
16   is going to be a public record.
17           The class is limited to seven current and former
18   drivers; the defense, Uber, various subsidiaries, various
19   owners, managers and/or shareholders.  The lawsuit was filed
20   June 2, 2016, claiming violations of the Fair Labor Standards
21   Act and the New York Labor Law, specifically, failure to pay
22   minimum wage and overtime, reimburse for business expenses and
23   other things like that.
24           The case has been very intensely pleaded and tried by
25   really good lawyers.  So if that's a flattery, which it is,

1   Ms. Mirer and Mr. Spurchise, take it as such.  I think both of
2   you have done a very good job.
3           The big problem is that the Second Circuit in
4   *Muñoz-Gonzalez v. DLC Limousine Service*, 904 F.3d 208 (2d Cir.
5   2018), put a crimp in Ms. Mirer's allegations, holding that
6   with respect to black car services, the drivers were not
7   covered by the Fair Labor Standards Act.  That made it very
8   difficult for you to pursue your lawsuit.  But I think the work
9   that you and Mr. Spurchise did in coming to the settlement that
10  you did shows proper regard for each other and for the Court
11  processes.  And I thank you both.
12          The proposed settlement provides that Uber shall pay a
13  total of $195,000 to resolve their claims, to be divided on a
14  pro rata basis based on the alleged value of each plaintiff's
15  breach of contract claim.
16          The sum also includes participation awards of $2,000
17  each to the six named plaintiffs; and $2,500, a little bit more
18  money, to Plaintiff Haider, the lead plaintiff, all of which I
19  think is reasonable, since they exposed themselves to the risks
20  of depositions and carrying on a service for others.  It turned
21  out that the class was limited just to them.  So I don't know
22  what difference -- well, it does make a difference to some
23  degree.
24          Now, the estimates of the exposures for breaches of
25  contract and unlawful deductions come to approximately

$225,000, exclusive of attorneys' fees and costs.  There's a breakdown in the settlement agreement as to what proportions each plaintiff's damage is after the whole.  And I think the proposed settlement of $195,000, which comes to 86.8 percent of the estimated maximum exposure for the aspect of the claim that reflects unlawful deductions, a breach of contract, and 173.6 percent of potential damages for breach of contract, which come to $112,000, are reasonable, particularly given the difficulty that Ms. Mirer had by reason of a Second Circuit decision.

Tell me a little, Ms. Mirer, how these proportions worked out for the plaintiffs, how do you come to them, what they're based on.

MS. MIRER:  Your Honor, what they are based on is we had everybody's, I guess, W-9s -- or, no, 1099s from the end of each year in which the amount in taxes and funds was stated.  We created a grid in which we added all of those up for each person.

THE COURT:  So it was a person-by-person calculation.

MS. MIRER:  It was a person-by-person calculation.  We gave credit to the people -- for the amount that they had already been reimbursed; we shared these numbers with the defendants.  They, I think, agreed that these were the actual numbers.

And then the pro rata is based on mainly the amount of time --

1           THE COURT:  All right.  So it's a merits percentage.
2           MS. MIRER:  Yes.  Absolutely.  Based on actual numbers
3    from each plaintiff's losses.
4           THE COURT:  Now, are all the six plaintiffs alive and
5    well, to your knowledge?
6           MS. MIRER:  Yes.  And there was --
7           THE COURT:  Have you had recent contact with them?
8           MS. MIRER:  Yes, each one of them signed a
9    declaration, as requested --
10          THE COURT:  So the checks to each -- the checks in
11   whole and the checks to each will be for the full amount of the
12   settlement.
13          MS. MIRER:  Correct.
14          THE COURT:  Nothing held back except attorneys' fees.
15          MS. MIRER:  Right.  The checks are separate, as far as
16   I understand.
17          THE COURT:  Okay.  I approve.  I think it's fair and
18   reasonable.  I think this litigation was hard-fought by very
19   good lawyers.  And I think, Ms. Mirer, you got the best that
20   was possible, maybe even a little more.
21          So I approve the settlement.
22          MS. MIRER:  Thank you, your Honor.
23          THE COURT:  There's no objection, right,
24   Mr. Spurchise?
25          MR. SPURCHISE:  Nothing, your Honor.  Thank you.

1           THE COURT:  Okay.
2           The next is a question of fees.
3           Ms. Mirer wants a third of the settlement plus costs.
4    It comes out to about $68,000, exclusive of costs.  I'm going
5    to ask Ms. Mirer to include her expenses in that number, and
6    then I'll approve the number.
7           MS. MIRER:  I'm sorry?
8           THE COURT:  I want you to include your expenses in the
9    68,212.98 you're asking for.
10          MS. MIRER:  I believe they are included.
11          THE COURT:  Just make sure.
12          So that is inclusive of all expenses?
13          MS. MIRER:  Yes, your Honor.
14          THE COURT:  Okay.  So when that $68,000 is subtracted
15   from the $195,000, the balance will be entirely remitted to the
16   plaintiffs.
17          MS. MIRER:  Yes.
18          THE COURT:  Okay.
19          And your time records come to what number?
20          MS. MIRER:  The time records came to -- between all of
21   us -- over 600,000, your Honor.
22          THE COURT:  So this amount is reasonable.  And it's a
23   sacrifice, but I think everyone sacrificed.  I approve it.
24          MS. MIRER:  Thank you, your Honor.
25          THE COURT:  And I think the agreement provides for

J4CVTAXC

1    dismissals.  Are they filed?  Do you have them here?
2          MS. MIRER:  It was an exhibit to the agreement.  I
3    think it was an exhibit.
4          MR. SPURCHISE:  Exhibit A, your Honor.
5          MS. MIRER:  Exhibit A.
6          THE COURT:  Would you have a copy that I can file?
7    Sign it, folks, and give it to me.
8          MS. MIRER:  Yes.
9          May I approach, your Honor?
10         THE COURT:  I've signed it.
11         I'll ask Ms. Jones to file it.
12         That ends the case.
13         I'm going to file a copy of the settlement agreement.
14    But I think what I'll do is file Ms. Mirer's letter of March
15    13, 2019 to which the settlement agreement is appended.
16         Did you submit this through ECF?
17         MS. MIRER:  Yes, everything was --
18         THE COURT:  You already filed it.
19         MS. MIRER:  It is already filed.
20         THE COURT:  Okay.
21         So we'll keep this in our files.
22         And I think that's it.
23         MS. MIRER:  Thank you, your Honor.
24         Thank you for all your help throughout this process.
25         THE COURT:  You're welcome.

```
 1            MS. MIRER:  And pushing us along and --
 2            THE COURT:  You're welcome.
 3            MS. MIRER:  And encouraging the settlement.
 4            THE COURT:  Thank you, Mr. Spurchise.
 5            MR. SPURCHISE:  Thank you, your Honor.
 6            THE COURT:  Okay.  We're finished.
 7                         *    *    *
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```